## STREET *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 1123. Submitted January 10, 1890.—Decided February 3, 1890.

It was the purpose of Congress by the 12th and 13th sections of the army appropriation act of July 15, 1870, 16 Stat. 318, 319, to reduce the number of officers in the army, and to that end § 11 authorized the President to eliminate from it officers who were unfit for the discharge of their duties by reason of a cause which had no meritorious claim upon the consideration of the government, while § 12 made a general grant of power to the President to make the reduction by selecting the best, and mustering out the residue; and the President, being empowered to proceed under either grant, could commence proceedings under § 11, and abandon them, and then proceed under § 12.

The 12th section of the army appropriation act of July 15, 1870, 16 Stat. 318, authorized the President to fill vacancies in the army then existing, or which might occur prior to the 1st day of January then next. The 1st day of January, 1871, fell on Sunday; *Held*, that, in the exercise of the power thus conferred, an order made on the 2d day of January, 1871, was valid.

The executive action, under the army appropriation act of July 15, 1870, reducing the army, was recognized by Congress in 18 Stat. 497, c. 159, § 2; 20 Stat. 35, c. 50; 20 Stat. 321, c. 100; 20 Stat. 354, c. 175; 21 Stat. 510, c. 151, and was thereby validated, even if otherwise invalid.

THE court stated the case, in its opinion, as follows:

. This is an appeal from a judgment of the Court of Claims. 24 C. Cl. 230. Appellant brought his action in that court to recover, not for services actually rendered, but for sixteen years' salary as first lieutenant, claiming that this was due by reason of an alleged illegality in the order of January 2, 1871, discharging him from the service. That order is, therefore, the matter of inquiry.

In 1869 and 1870 acts of Congress were passed looking to a reduction in the army, and the order in question was made in pursuance of the last of these acts. The intent of Congress is obvious, and all proceedings had to carry such intent into effect should be liberally construed, and not subjected to any such technical limitations as will thwart such obvious purpose. The act of July 13, 1866, 14 Stat. 92, has no bearing on the case at bar, for, as held by this court in *Blake* v. *United States*, 103 U. S. 227, it simply placed a limitation on the personal power of the President, as commander-in-chief in time of peace, to dismiss from the service. It was not intended to have — as it could not have — any effect on the power of a subsequent Congress to reduce the army by appropriate legislation in respect to either its officers or enlisted men.

The act of March 3, 1869, 15 Stat. 315, c. 124, §§ 2–7 inclusive, is significant only as indicating the intent of Congress that the army should be reduced, for the method of reduction there provided is simply the cessation of enlistments and appointments. Evidently the reduction by this method was not as rapid as was desired, for on July 15, 1870, an act was passed making provision for a direct reduction. 16 Stat. 315, c. 294. Section 2 authorizes and directs the President to reduce on or before the first day of July, 1871, the number of enlisted men to thirty thousand. With respect to the officers there were several sections aimed at reduction; some abolishing certain offices; others providing that no appointments to particular offices should be made until the number of incumbents was reduced below a prescribed limit. In addition, there were four provisions having general application. Section 3 authorized the President to grant an honorable discharge to all officers applying on or before the first of January, 1871, and giving the officers so discharged an additional year's pay and allowances. Sections 4 and 5 increased the retired list to 300, and authorized the President to place on such list, on their own application, officers with thirty years' service. The other provisions are found in sections 11 and 12, which, as being the sections specially bearing on the questions in this case, are quoted as follows:

" Sec. 11. *And be it further enacted,* That the general of the army and commanding officers of the several military departments of the army shall, as soon as practicable after the passage of this act, forward to the Secretary of War a list of officers serving in their respective commands deemed by them unfit for the proper discharge of their duties from any cause except injuries incurred or disease contracted in the line of their duty, setting forth specifically in each case the cause of such unfitness. The Secretary of War is hereby authorized and directed to constitute a board to consist of one major general, one brigadier general and three colonels, three of the said officers to be selected from among those appointed to the regular army on account of distinguished services in the volunteer force during the late war, and on recommendation of such board, the President shall muster out of the service any of the said officers so reported, with one year's pay ; but such musterout shall not be ordered without allowing such officer a hearing before such board to show cause against it.

" Sec. 12. *And be it further enacted,* That the President is hereby authorized to transfer officers from the regiments of cavalry, artillery and infantry to the list of supernumeraries ; and all vacancies now existing, or which may occur prior to the first day of January next, in the cavalry, artillery, or infantry, by reason of transfer, or from other causes, shall be filled in due proportion by the supernumerary officers, having reference to rank, seniority and fitness, as provided in existing law regulating promotions in the army. And if any supernumerary officers shall remain after the first day of January next they shall be honorably mustered out of the service with one year's pay and allowances: *Provided,* That vacancies now existing in the grade of second lieutenants, or which may occur prior to said date, may be filled by the assignment of supernumerary first lieutenants, or officers of higher grades, who, when so assigned shall rank as second lieutenants, *providing* [provided] such officer shall prefer to be assigned, instead of being mustered out under the provisions of this section ; and officers so assigned shall take rank from the date of their original entry into the service : *And provided further,* .

That no chaplain be appointed to posts or regiments until those on waiting orders are assigned."

It appears from the findings that on October 27, 1870, the claimant, who was on active duty at Fort Bidwell, California, was reported by the Department Commander, Lieutenant Colonel George Crook, as unfit for the proper discharge of his duties from other causes than injuries incurred or disease contracted in the line of his duties. His name was submitted to the board organized in pursuance of the 11th section quoted *supra.* On the 17th of November the board requested that he, with others named, be given a hearing, as required by that section. On November 19th the Adjutant General informed the board that the stations of these officers were so remote that it was impossible for it to consider their cases, and that the Secretary of War had directed that they be not ordered to appear. In compliance with this order, on November 22, the papers in these cases were returned to the Secretary of War. In other words, the proceedings initiated in section 11 were abandoned. No inquiry was ever made as to the alleged unfitness for the proper discharge of his duties from causes other than injuries incurred or disease contracted in the line of duty. It appears further, that on January 2, 1871, January 1st being Sunday, an order was issued by the Secretary of War, which, so far as it affects this claimant, reads as follows:

(*General Orders, No.* 1.)

WAR DEPARTMENT, ADJUTANT GENERAL'S OFFICE.

WASHINGTON, *January* 2, 1871.

By direction of the President, the following officers of the army are transferred, assigned, or mustered out of the service, to take effect from the 1st instant:

I. — *Transfers to the List of Supernumeraries, under Section 12 of the Act Approved July* 15, 1870.

\* \* \* \* \*

First Lieutenant Harlow L. Street, First Cavalry.

\* \* \* \* \*

II. — *Transfers and Assignments to Fill Vacancies to . the Present Date.*

\*　　　\*　　　\*　　　\*　　　\*

First Lieutenant Max Wessendorff, unassigned, to the First Cavalry, *vice* Street, transferred to the list of supernumeraries.

\*　　　\*　　　\*　　　\*　　　\*

III. — *Unassigned Officers whose Commissions have expired under Section 12 of the Act of Congress approved July 15, 1870, and who are Honorably Mustered out of the Service.*

\*　　　\*　　　\*　　　\*　　　\*

First Lieutenant Harlow L. Street.

\*　　　\*　　　\*　　　\*　　　\*

By order of the Secretary of War:

E. D. TOWNSEND,
*Adjutant General.*

Subsequently, on September 18, 1871, he received the year's pay provided for in section 12, and still later, on the 18th of February, 1881, he was paid the sum of $117.95 upon treasury settlement, on account of some errors in the previous payment.

*Mr. J. M. Vale* for appellant.

I. Being reported as unfit for the proper discharge of his duty for cause other than injuries incurred or disease contracted in the line of his duty, by the commanding officer of a military department and by the general of the army, on the 10th of November, 1870, under the provisions of section 11 of the act of July 15, 1870, 16 Stat. 315, appellant, then an officer in the military service of the United States, could not be legally mustered out of the service under the said act of July 15, 1870, without being allowed a hearing before the board provided for in that section, to show cause against such muster out. 13 Opinions Attys. Gen. 353; 13 Opinions Attys. Gen. 412; *United States* v. *Freeman,* 3 How. 556, 565.

II. Section 12 of that act authorized the President to transfer officers from active duty to the list of supernumeraries, and, prior to January 1, 1871, to fill vacancies on the active list by

supernumerary officers. This authority expired January 1, 1871, and after that time no disposition could legally be made of a supernumerary officer, except to honorably muster him out of the service, and pay him in accordance with the provisions of the act. The list ceased on that date, except as a designation for honorable muster out, and no transfers could legally be made to it on the 2d day of January, 1871. *Brown* v. *Barry*, 3 Dall. 365; *Minor* v. *Mechanics' Bank*, 1 Pet. 46; *Thornley* v. *United States*, 113 U. S. 310.

III. The acceptance or non-acceptance by appellant of the discharge and year's pay, provided for officers discharged under the act of July 15, 1870, with or without protest, did not alter his legal status, if notified of his discharge as a supernumerary officer under the erroneous construction of the law. *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326; *Ketchum* v. *Duncan*, 96 U. S. 659; *Morgan* v. *Railroad Co.*, 96 U. S. 716; *United States* v. *Redgrave*, 116 U. S. 474.

IV. The nomination of Wainwright by the President *vice* Wessendorff promoted, and his confirmation by the Senate, did not operate to supersede appellant, who was a stranger to the record of nomination and confirmation, and was not a nomination by the President of Wainwright and his confirmation by the Senate, to the office held by appellant, Harlow L. Street. Official Army Register 1871; *Blake* v. *United States*, 103 U. S. 227; Army Regulations 1863, paragraph 20; *Lapeyre* v. *United States*, 17 Wall. 191; *Runkle* v. *United States*, 122 U. S. 543.

*Mr. Assistant Attorney General Cotton* and *Mr. F. P. Dewees* for appellees.

MR. JUSTICE BREWER, after stating the case as above, delivered the opinion of the court.

The principal contention of the appellant is that, proceedings having been commenced under section 11, they should have been carried to a close, and that he could be mustered out of the service only upon an adjudication by that board of

unfitness. But this view cannot be sustained. It arises from a misconception of the scope of the two sections. The first aims to eliminate from the army those officers who are unfit for the discharge of their duties, and whose unfitness springs from no cause of meritorious claim upon the consideration of the government; while the other is a grant of general power to the President to reduce the number of officers by selecting the best and mustering out the residue. It is comprehensive in its scope, and not at all dependent upon the failure to accomplish the requisite reduction through proceedings under section 11. It is in no manner subordinated to or dependent upon that section, and grants a power which can be exercised irrespective of all other proceedings.

The appellant had no vested right to an adjudication upon the matter reported against him. In the absence of express limitation, the government may always withdraw charges which it has made. There is nothing in the words of either section, nothing in the scope and purpose of their provisions, or in any general rule of law, which prevented the government from abandoning the proceedings initiated under section 11, and proceeding to muster out the appellant under section 12.

The other proposition of the appellant is that the authority given by section 12 was not strictly pursued. While it is conceded that the President might add to or take from the list of supernumerary officers, it is urged that he could muster out only those who were supernumerary officers at the close of the first day of January, 1879, the language being: "And if any supernumerary officers shall remain after the first day of January next they shall be honorably mustered out," etc., whereas, by the order actually made, he was transferred to the supernumerary list only on the second day of January. Concede the irregularity, and it is not such as vitiates the order. The purpose of the act is obvious. The direction of Congress was clear and distinct, and it would be strange if any executive officer could, by irregularity in executing the mandate of Congress, thwart this purpose. The matter of time was not vital. The purpose was reduction, and a reduction to be accomplished by selecting the best and mustering out the poorer element;

and while Congress prescribed the time within which this mandate was to be executed, there is neither in terms nor by implication any subordination of the power to the matter of time.

Again, it must be noticed that the first day of January was Sunday, that is, a *dies non*, and a power that may be exercised up to and including a given day of the month may generally, when that day happens to be Sunday, be exercised on the succeeding day. So that it is a matter worthy at least of consideration whether the power was not exercised within the very limits of time prescribed by the act.

It is well in this respect to compare this section with section 3. By that the President was authorized to honorably discharge, with pay and allowances, officers who should apply on or before January 1, 1871. By that section a reduction through the voluntary act of army officers was contemplated, and such voluntary action was authorized and invited to be had on the first day of January. While section 12 was not dependent upon section 3, yet it is obvious that action so voluntarily taken by any army officer would limit the amount of enforced reduction, and to that extent relieve the President from embarrassment in the selection authorized by section 12; and there was a propriety, if nothing else, in waiting until the close of the first day of January before exercising the power of selection and mustering out.

It will also be noticed that section 12 places no limitation on the time within which the President is authorized to transfer officers to the list of supernumeraries. If voluntary resignation by the close of the first day of January made sufficient reduction, there would be no necessity of transferring any to the list of supernumeraries, and it was only the supernumerary officers remaining after the 1st of January — that is, the officers then found not to be needed for the service — who were to be mustered out under that section. There was, therefore, no requirement that the President should transfer to the supernumerary list before the close of the first of January; the number which it was necessary to transfer could not be absolutely determined until the close of that day, and it was only those who, at the close of that day, were not needed

in the service, that the President could muster out. All these matters justified the action of the President taken on the 2d of January, and if they do not establish that it was in full and literal compliance with the exact provisions of section 12, they certainly leave so slight a departure as scarcely to be worthy of mention. It is certainly no such deviation from the prescribed course as to vitiate the order and thus nullify the express direction of Congress.

But we are not limited to this. Full power of legislation in the matter of increase and reduction of the army is with Congress. It prescribed in this act the proceedings by which that reduction was to be accomplished. In pursuance of that act certain proceedings were had. The power which can direct what proceedings shall be had can approve and make valid any proceedings which are actually taken. The power which can give authority to act can ratify any act that is taken, and generally legislative recognition of an act or a corporation validates the act or the corporation, although neither one nor the other may have had full prior legal authority. *Comanche County* v. *Lewis, ante,* 198.

There was but one order issued under section 12 for the mustering out of supernumerary officers. In that order were many names besides that of the appellant, and the act of March 3, 1875, 18 Stat. 497, c. 159, § 2, refers to "any person who was mustered out as a supernumerary officer of the army with one year's pay and allowances," under the act of 1870, that we have been considering. Further, on April 8, 1878, 20 Stat. 35, c. 50 ; 25th of February, 1879, 20 Stat. 321, c. 100 ; March 3, 1879, 20 Stat. 354, c. 175 ; and March 3, 1881, 21 Stat. 510, c. 151, acts were severally passed authorizing the restoration to the army of John A. Darling, Michael O'Brien, Philip W. Stanhope and Redmond Tully, who had been mustered out by this order of January 2, 1871, and those acts all assume the validity of that order. There has been thus full legislative recognition of its validity. It is too late, therefore, now to enquire as to whether it was in technical compliance with the procedure prescribed by the act of 1870.

We see no errors in the ruling of the Court of Claims, and its judgment is                                          *Affirmed.*