# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## MARCH TERM, 1912.

RICHARD GRIFFITH *v.* MAYOR AND ALDERMEN CITY OF VICKSBURG.

[58 South. 781.]

1. LEGAL HOLIDAYS. *Municipal ordinances. Issuance of bonds. Statutory provisions. Bonds. Elections. Validity.*

All acts done on a legal holiday are legal and valid, except such as are prohibited by the statute setting apart the day as a holiday.

2. MUNICIPAL CORPORATIONS. *Issuance of bonds. Statutory provisions.*

The legislature has the power to authorize municipalities to issue bonds without giving the notice, such as is required by their charters and it was within the power of the legislature to ratify by a subsequent statute the bonds issued without the notice required by the charter being given.

3. SAME.

The legislature may, within constitutional limits, subsequently ratify any unauthorized act which it has the power to authorize in advance.

102 Miss.]　　　　　(1)

4. MUNICIPAL CORPORATIONS. *Bonds. Elections. Validity.*

The participation by disqualified persons in an election in a city on the question of the issuance of bonds, will not invalidate such election where their votes did not affect the result of such election.

5. MUNICIPAL CORPORATIONS. *Acquisition of waterworks. Issuance of bonds. Discretion.*

Where a city had granted a franchise to a company to supply water to the city and desiring city ownership of the water plant commenced four years before the expiration of such franchise to prepare to do so by ordering an election and issuing bonds; this was not an abuse of its discretion in the matter, and the courts will not restrain the issuance of the bonds.

6. MUNICIPAL CORPORATIONS. *Issuance of bonds. Ordinance. Validity.*

It is immaterial that the ordinance under which municipal bonds are to be issued provides that they are "to be issued in accordance with the requirement and provisions of the city charter," instead of in accordance with the requirements of Ch. 142, Laws 1910, where the requirement of the statute and the charter are identical in this particular, for in complying with its charter, the city necessarily complied with the requirements of the statute.

APPEAL from the chancery court of Warren county. HON. E. N. THOMAS, Chancellor.

Suit by Richard Griffith against the mayor and board of aldermen of the city of Vicksburg. From a judgment dissolving the injunction and dismissing the bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Henry & Canizaro,* for appellant.

The validity of the proposed bonds is assailed upon a number of grounds, the first of which is that the meeting of the mayor and aldermen at which the preliminary ordinance looking to the issuance of said bonds was adopted, was held on the 1st day of January, which is a legal holiday under Sec. 4011 of the Code of 1906. By an examination of this section it will be seen that it is

a departure from the corresponding section of the Code 1892, in that it not only prescribes the day upon which commercial paper maturing upon the days named shall be presented, but declares that those days shall be legal holidays. So far as we know, this court has never determined what effect, if any, is to be given to the statutory designation of those days as legal holidays, and we submit to the court for determination the question whether or not any legislative proceedings, such as the enactment of the ordinance in question, had upon one of those days, are valid.

The next ground upon which the bond issue is assailed is that the charter of the city of Vicksburg, under which the bonds are proposed to be issued, requires that before an election shall be held to determine the wishes of the qualified voters, notice shall be published in some newspaper for three weeks preceding the calling of the election. The provisions of the city charter in this particular are identical with Sec. 3419 of the Code of 1906. In the case of *Clarksdale* v. *Broaddus,* 77 Miss. 667, this court held that the required notice must be given even though an election must necessarily be held by reason of the fact that the total indebtedness of the municipality exceeds seven per cent of its assessed valuation. Applying this decision to the case at bar, the proposed bond issue is rendered utterly invalid by reason of the failure to give such notice, unless it is cured by the act of the legislature approved March 4, 1912, which is set up by way of defense in the answer filed by the city. This act undertakes to validate all municipal bonds which have been authorized by a two-thirds vote of the qualified voters voting at a municipal election held to determine the question of the issuance of municipal bonds, where such bonds have not already been issued, even though the required notice, or any other preliminary steps may have been omitted. If this statute is a valid exercise of legislative power, we admit that it cures the failure to give

notice; and whether it is valid we submit to this court for determination. We have been unable to find any authority directly holding that such retroactive legislation is invalid, and in as much as the question of its validity is rather one of public policy, we do not believe the decisions of other state courts would be very strongly persuasive.

The bonds are further assailed for the reason that a large number of persons were permitted to vote at the election who registered within four months prior thereto, notwithstanding the provision of the Constitution, and a similar provision of the charter of the city of Vicksburg, to the effect that persons shall not vote at an election held within four months after their registration. Of course, there is no way to determine how these disqualified voters voted, and we submit to the court the question as to whether or not their number was not sufficient to vitiate the entire election.

A further ground of complaint is that the proposed waterworks plant, if built, cannot be operated until the fall of the year, 1916, and if work is now commenced it will be completed long prior to that time, and will remain idle between the time of its completion and the date at which it can be operated. The defendant has already been enjoined by the federal court from operating a waterworks plant in competition with the existing plant until the expiration of its franchise, and if the proposed plant is finished before that time it must necessarily remain idle until the outstanding franchise expires. We submit that it is an abuse of the discretion vested in the municipal authorities of Vicksburg to invest so large a sum at this time in a plant which it has not the legal power to operate.

The pleadings show that the proposed bonds were directed by the resolution of January 1, 1912, to be issued under the charter of the city of Vicksburg, as amended, which Ch. 142 of the acts of 1910 purports

to apply to all municipalities and to regulate and control all bond issues. We submit that this act is exclusive and that the provisions of the charter of Vicksburg on the subject were inoperative, and that for that reason no bonds purporting to be issued thereunder are valid.

We regret that we are unable to render the court any assistance in determining the various questions by citation of authorities from other states, but in as much as the entire matter depends upon local statutes, it is obviously impossible to find such decisions.

*George Anderson, John Brunini* and *O. W. Catchings,* for appellee.

The first ground upon which the validity of the proposed bond issue is questioned is that the meeting of the board of mayor and eldermen of Vicksburg, at which it was first authorized was held on New Year's day, which is a legal holiday under Sec. 4011 of the Code of 1906. We respectfully submit that there is absolutely no authority for the proposition that the mere designation by statute of a given day as a legal holiday, makes it *dies non,* and places it in all respects upon the same footing as Sunday. The fact that section 4011 forms part of the Code chapter on promissory notes, and that after designating certain days as legal holidays, it proceeds to make provisions for presentation of commercial paper which falls due on those days, clearly indicates, we think, that the legislature had no other purpose than to make provision for such presentation. It would certainly be extraordinary if an obscure section of the chapter which relates only to commercial paper should have the effect of prohibiting all public and private acts on the days named.

The reason that Sunday has come to be regarded as a nonjuridical day, is that its sacred character is such that it is improper for public or private acts of a legal

nature to be then performed. The days designated in
the Code as legal holidays were chosen for entirely dif-
ferent reasons, most of them being to celebrate the an-
niversary of some great event; and there is no reason
why the legislature should have considered it improper
for a municipal corporation to undertake to legislate on
such days. Aside from these considerations, the courts,
we think, are substantially unanimous in holding that
the mere designation of a day as a legal holiday, does
not put it upon the same basis as Sunday, that is to say,
does not make it *dies non.*

There is a very full discussion of the question in the
article on holidays in volume 21 of the Cyclopedia of
Law and Procedure. The cases are there collated and
the conclusion announced is as stated by us. We will not
trespass upon the court's time by undertaking to review
the various cases. We quote from the text on pages 440
and 441 as follows:

"A legal holiday—other than Sunday—has effect as a
holiday only as to those acts and transactions which
are designated in the statute, establishing the day. Ac-
cordingly it is held that with the exception of matters
concerning which the statute provides that the day shall
be treated as Sunday, any act done on that day is as
effective as if done on any other day."

The statutes of the various states alluded to in the
decisions cited are in most instances much broader and
more comprehensive than ours, in that they generally
contain an absolute prohibition of the transaction of
public business on the holidays mentioned. Notwith-
standing this prohibition the courts held that the acts
done in contravention of the statute are none the less
valid. Thus the supreme court of New Jersey has held
that "the enactment of municipal ordinances does not
come within the meaning of the statute prohibiting the
transaction of legal business in the offices of the state
or counties on holidays." *Lord* v. *Gifford,* 67 N. J. L.

193; *Mueller* v. *Egg Harbor City*, 45 N. J. L. 245. Decisions are cited from perhaps fifteen or twenty states to the same effect.

It is claimed that the proposed bond issue is invalid for the reason that notice of the proposal to issue bnds was not given, as required by the city charter. The provisions of the charter of Vicksburg as to the issuance of municipal monds are identical with those contained in Ch. 142 of the Acts of 1910 and the Code provisions on the subject. The scheme contemplates that bonds may be issued by the mayor and aldermen without an election, where the amount proposed to be borrowed, together with the outstanding indebtedness, does not exceed seven per cent of the assessed valuation of all the property in the city, and the purpose of the requirement that notice be given of the intention to issue bonds, is that the qualified voters may have an opporunity to protest in writing, in which event an election must be held, even though the indebtedness do not exceed two-thirds of the assessed valuation. On the other hand, where the indebtedness does exceed two-thirds of the assessed valuation, an election must be held, whether the qualified voters protest or not, and due notice of the election must be given by advertisement in the local papers.

We submit that it would have been an idle and unnecessary step for the municipal authorities solemnly to give notice of their intention to issue bonds in order that the qualified voters might protest, and thus bring about an election, when an election was necessary without regard to such protest, for the reason that the indebtedness exceeded two-thirds of the assessed valuation at that time.

The court should not confuse the two notices required to be given. The notice which was not given was of the intention to issue bonds. Due notice was given of the election, and an unusually heavy vote was in fact polled.

The matter was agitated in the newspapers and on the streets for many weeks, and it is not possible that a single qualified voter of Vicksburg could have failed to know that an election was to be held. Everything was done exactly as it would have been done if the notice had been given. No rights were affected in any way by the failure to give notice, and we feel confident that the court will not adopt so technical a construction as that contended for by appellant, and we say this with full knowledge of the fact that in the case of *Clarksdale* v. *Broaddus,* 77 Miss. 667, this court did adopt that construction.

We respectfully submit that for the reasons given, having in view the purpose of the required notice and its utter futility in the case at bar, this court will not adhere to the doctrine of that case.

However this may be, the answer sets up the enactment of a statute by the last legislature, which was approved on March 4, 1912, and a copy of which we will file as an appendix to this brief for the convenience of the court. The purpose and effect of this statute was to cure any invalidity in any proposed bond issue arising out of the failure to give any notice or to do or perform any other preliminary step required by law, where the proposed bonds were actually authorized by a vote of two-thirds of the qualified electors of the municipality voting at an election held for that purpose. This statute was enacted at the instance and request of the municipal authorities of the city of Vicksburg when it was discovered that the notice of the intention to issue bonds had been inadvertently omitted, the purpose being to render the bond issue valid notwithstanding this failure; and in order that there might be no further grounds of attack, it was provided that all irregularities in the preliminary steps should be waived and cured. Counsel for appellant merely suggests that it is beyond the power of the legislature to enact retroactive legislation, and

that such legislation is against the public policy of this state.

This court has frequently held that where the legislature has clearly indicated its intention that a statute should be given retroactive effect, this will be done, there never having been, so far as we know, any question raised as to the power of the legislature to enact retroactive legislation. The matter has simply been presented as a question of construction as to whether or not the legislature intended that a retroactive effect should be given, it being always conceded that the power to enact retroactive legislation existed. Curative statutes, as they are commonly called, similar to the one under discussion, have been commonly enacted by the various states, including our own, and have, so far as we are advised, received the universal sanction and approval of the courts. Our own court has several times held that it is entirely within the power of the legislature to cure or waive any irregularity or informality in the exercise by a municipal corporation of any power possessed by it. Some of the courts of the various states have expressed a doubt as to whether a legislature can validate bonds which have been issued without any legislative authority, that is to say, whether a legislature can retroactively confer the power to issue bonds. It has never been doubted, however, that where the power existed, defects and irregularities in its exercise can be cured by legislative action. In the case at bar it is not questioned that the city of Vicksburg had the power under its charter and under existing law, to issue the bonds. The only complaint is that through oversight or omission, there was a defective exercise of the power in that notice was not given. The curative act of the legislature, which undertook to validate the bonds, notwithstanding this irregularity, comes squarely within the cases which uphold such acts,

This court, in the case of *Hawkins et al.* v. *Carroll County,* 50 Miss. 765, expressly held that: "If the

project was not adopted by the requisite majority, plainly the legislature could not by a curative statute, cure so radical an infirmity. If there were mere irregularities in the election, at which two-thirds of the voters give their assent, these may be cured; but not the failure to hold an election, or a failure of the requisite majority. For that would be to impose the obligations on the county, in circumstances not warranted by the Constitution and Laws.''

This court, in the case of *Sykes* v. *Columbus,* 55 Miss. 115, had under consideration the validity of a curative act, which undertook to remove objections to a bond issue, and said: "In *Hawkins* v. *Carroll County,* 50 Miss., it was not questioned that the legislature might cure a defective or irregular exercise of a power previously granted; it might cure irregularity in the election, but it could not dispense altogether with an election. The act of 1872 is not relied upon to waive mere irregularities in the execution of the power—but as conferring power by retrospective operation. If the bonds are obligatory on the city of Columbus, they become so for the first time by virtue of this statute. The legislature of 1872 could not by relation put itself back to 1869 and exercise power not denied or restricted by the Constitution of 1832. The measure of its power was the Constitution of December, 1869, and it could not ratify an act previously done, if at the date it professed to do so it could not confer power to do it in the first instance. It could authorize municipal loans conditionally. In order to ratify and legalize a loan previously made it was bound by the constitutional limitation of its power.''

This case is squarely in point as to the effect of the Act of March 4, 1912. The court expressly held that if the curative act had undertaken merely to cure an irregularity, it would have had that effect; but that in as much as it undertook to confer power by retrospective operation at a time when, by reason of a change in the

Constitution the legislature had no power as an original proposition to authorize the issuance of the bonds in question, it could not do so. The court quoted with approval *Thomson* v. *Lee County,* 3 Wall. 331, in which the Supreme Court of the United States said: "If the legislature possessed the power to authorize the act to be done, it could by a retrospective act cure, etc. . . . because the power thus conferred had been irregularly executed."

This doctrine has repeatedly been announced by the Supreme Court of the United States, and we will not burden the court by citing these decisions.

In an article on municipal corporations in volume 28 of the Cyclopedia of Law and Procedure, authorities are cited from Alabama, California, Connecticut, Georgia, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Minnestota, Missouri, New Jersey, New York, North Carolina, Pennsylvania, Wisconsin, Massachusetts and other states, and from the Supreme Court of the United States, in support of legislative power to enact statutes which cure irregularities in the issuance of municipal bonds. No cases whatsoever are cited to the contrary.

This court, in the case of *Adams* v. *Kuykendall,* 83 Miss. 571, took a most extreme view of the absolute and entire control of the municipalities in this state by the legislature. In this connection it said:

"Municipal corporations are now, as they have always been in this state, purely creatures of the legislature's will, governed, and the extent of their powers limited, by express grants; invested, for purposes of public convenience, with certain expressed delegations of governmental power; their granted powers subject at all times to be enlarged or diminished; having no vested rights in their charters which are subject at all times to amendment, modification or repeal; their powers, their rights, their corporate existence, dependent entirely upon leg-

islative discretion, acting as it may deem best for the public good. This conclusion has been so repeatedly announced by our own courts, and has been so uniformly approved by text-writers and decided by courts of last resort in other states, that it has become crystallized into settled law, and now receives recognition as a universally accepted rule of constitutional construction. Unless expressly limited by constitutional provision, the legislative department has absolute power over municipalities.''

We submit that there is no principle of public policy, of reason, or of law, which has the effect of invalidating the Act of March 4, 1912. It is not and cannot be claimed that its terms are not sufficiently comprehensive to cure the failure to give notice, and if it is, as we do not doubt this court will hold, valid legislation, the failure to give notice can be given no effect.

SMITH, J., delivered the opinion of the court.

The mayor and board of aldermen of the city of Vicksburg, on the 1st day of January, 1912, by an ordinance authorized the issuance of bonds of the city to the amount of forty thousand dollars for the purpose of constructing a waterworks plant, to be operated by the city after the expiration of the franchise of the company now furnishing the city and its citizens with water, provided that the issuance thereof should be assented to by two-thirds of the qualified voters of the city, voting in an election ordered to be held for that purpose. This election was necessary, for the reason that these bonds, added to the amount of bonds theretofore issued by the city, would exceed seven per cent. of the value of the taxable property thereof. This election having been duly held, after notice thereof had been given as required by law, and more than two-thirds of the voters participating therein having assented to the issuance of the bonds, this injunction was sued out to restrain the issuance thereof,

and from a decree dissolving the injunction and dismissing appellant's bill, this appeal is taken.

One of appellant's contentions is that, since by Sec. 4011 of the Code of 1906 the 1st day of January is declared to be a legal holiday, the ordinance providing for the issuance of the bonds is void. The mere fact that the legislature has declared a day other than Sunday to be a legal holiday does not make such day *dies non.* All acts done on such a day are lawful and valid, except such as are prohibited by the statute setting apart the day as a holiday. 24 Cyc. 440, *et seq.;* 27 Am. & Eng. Ency. Law (2 Ed.) 415, and authorities there cited. This contention of appellant is therefore without merit.

Appellee's charter contains a provision, similar to Sec. 3419 of the Code of 1906, that "before providing for the issuance of any bonds, the board shall publish notice of the proposal to issue the same in a newspaper published in the municipality, or having a general circulation therein if none be there published, for three weeks next preceding; and, if within that time, twenty per centum of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued, unless authorized by a majority of the electors voting in an election to be ordered for that purpose." This notice was not given; but notice of the election ordered to be held in order that the qualified electors might determine whether or not the bonds should be issued was given. Another of appellant's contentions is that the failure to give this notice is fatal to the validity of the bonds, in support of which we are referred to the case of *Clarksdale* v. *Broaddus,* 77 Miss. 666, 28 South. 954. We are relieved from the necessity of deciding this point, for the reason that this defect, if defect it is, has been cured by a statute passed by the last session of the legislature, entitled "An act to validate all municipal bonds heretofore authorized by a legal majority of the qualified electors thereof voting at

an election held for that purpose to be issued, when the municipal authorities have failed to take any of the preliminary legal steps for the issuance of said bonds, and for other purposes,'' approved March 4, 1912. It is beyond question that the legislature has the power to authorize municipalities to issue bonds without giving notice, such as is required by the provision of appellee's charter now under consideration, and consequently it was within its power to ratify by a subsequent statute the bonds issued without the notice required by the charter being given; for, as a general rule, the legislature may, within constitutional limits, subsequently ratify any unauthorized act which it has the power to authorize in advance. 28 Cyc. 1606; 8 Cyc. 1023; 20 Am. & Eng. Ency. (2 Ed.) 1226; 6 Am. & Eng. Ency. (2 Ed.) 940; *Sykes* v. *Mayor, etc., of Columbus,* 55 Miss. 115; *Bolles* v. *Brimfield,* 120 U. S. 759, 7 Sup. Ct. 736, 30 L. Ed. 786; *Street* v. *U. S.,* 133 U. S. 299, 10 Sup. Ct. 309, 33 L. Ed. 631.

Another of appellant's objections is that a number of persons voted in the election who had registered within less than four months prior thereto. Assuming, but not deciding, that these persons were not entitled to participate in the election, it is not void for the reason that their participation therein did not affect the result thereof. The total number of votes cast in the election was twelve hundred and fifty-eight, of which ten hundred and ninety-one were in favor of the bond issue and one hundred and sixty-seven against it. The number of voters alleged to be disqualified was two hundred and eleven. If we assume that all of these voted in favor of the bond issue, and that, consequently, had they not been allowed to vote, the number of votes in favor thereof would have been eight hundred and eighty instead of ten hundred and ninety-one, still the majority in favor of the bond issue would have been more than the necessary two-thirds.

Another of appellant's contentions is that, since appellee cannot operate a waterworks plant until the ex-

piration in 1916 of the franchise of the present water-
works company, the issuance of bonds for that purpose
at this time is unnecessary, and constitutes an abuse of
appellee's discretion in the matter.. Conceding, but not
deciding, that the abuse of appellee's discretion in this
matter can be prevented by an appeal to the courts, cer-
tainly it must clearly appear that this discretion is, in
fact, being abused before the courts would be warranted
in interfering therewith. There is nothing in this rec-
ord from which it can be said that it is not necessary
to begin preparing for the construction of a waterworks
plant four years before the plant is to be actually opera-
ted; consequently it cannot be said that appellee's dis-
cretion in this matter is being abused.

It is immaterial that the ordinance under which these
bonds are to be issued provides that they are "to be
issued in accordance with the requirements and provi-
sions of the charter of the city of Vicksburg and the
amendments thereto," etc., instead of in accordance
with the requirements of Ch. 142 of the Laws of 1910, for
the reason that the requirements of this statute and of
appellee's charter in this particular are identical, and
in complying with the requirements of its charter ap-
pellee necessarily complied with the requirements of the
statute.

There is no merit in any of appellant's contentions,
and, consequently, the decree of the court below is af-
firmed.                                                    *Affirmed.*