**Slip Op. 00-27**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                       :
LUXURY INTERNATIONAL, INC.,            :
                                       :
          Plaintiff,                   :
                                       :
          v.                           :     Court No. 99-02-00093
                                       :
UNITED STATES; RAYMOND KELLY,          :
COMMISSIONER OF CUSTOMS;               :
IRENE JANKOV, PORT DIRECTOR,           :
LOS ANGELES CUSTOMS DISTRICT,          :
UNITED STATES CUSTOMS SERVICE,         :
                                       :
          Defendants,                  :
                                       :
          and                          :
                                       :
ZAO ELORG and THE TETRIS COMPANY,      :
LLC,                                   :
                                       :
          Defendant-Intervenors.       :
_____:

Plaintiff, Luxury International, Inc. ("Luxury"), seeks an order: (1) compelling the United States Customs Service ("Customs") to release its LCD hand-held video games ("LCD games") from detention; and (2) requiring Customs to deliver to it the security posted by the defendant-intervenors, ZAO Elorg ("Elorg") and The Tetris Company, LLC ("Tetris").  Luxury contends that Customs' remand determination finding that its LCD games infringed on Elorg/Tetris' copyright was erroneous and that, therefore, the continued detention of the LCD games and the security is unlawful. Defendant-intervenors, on the other hand, request that the Court: (1) affirm Customs' remand determination; (2) instruct Customs to seize the LCD games; (3) order Customs to return the security to them; and (4) grant their motion to dismiss.

**Held:** Customs' remand determination is affirmed.  Luxury's request for an order compelling Customs to release its LCD games and to deliver the security to it is denied.  Elorg/Tetris' request for an order compelling Customs to seize the LCD games and return the security to them is granted.  Elorg/Tetris' motion to dismiss is granted.

Dated: March 17, 2000

Law Offices of Elon A. Pollack (Elon A. Pollack and Eugene P. Sands) for plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Saul Davis); of counsel: Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendants.

Leboeuf, Lamb, Greene & MacRae, L.L.P. (Melvin S. Schwechter, David P. Sanders and Julie A. Coletti) for defendant-intervenors.

**OPINION**

**TSOUCALAS, Senior Judge:** Plaintiff, Luxury International, Inc. ("Luxury"), seeks an order: (1) compelling the United States Customs Service ("Customs") to release its LCD hand-held video games ("LCD games") from detention; and (2) requiring Customs to deliver to it the security posted by the defendant-intervenors, ZAO Elorg ("Elorg") and The Tetris Company, LLC ("Tetris"). Luxury contends that Customs' remand determination finding that its LCD games infringed on Elorg/Tetris' copyright was erroneous and that, therefore, the continued detention of the LCD games and the security is unlawful. Defendant-intervenors, on the other hand, request that the Court: (1) affirm Customs' remand determination; (2) instruct Customs to seize the LCD games; (3) order Customs to return the security to them; and (4) grant their motion to dismiss.

### BACKGROUND

On February 19, 1999, Luxury brought an action in this Court contesting Customs' denial of its protest, challenging the continued detention of its LCD games.[1] The Court determined that while it could properly exercise jurisdiction over Customs' denial of Luxury's protest under 28 U.S.C. § 1581(a) (1994), Luxury had prematurely commenced the action in the Court and had effectively circumvented the administrative process by which Customs would have ultimately issued a determination on whether the LCD games infringed on Elorg/Tetris' copyright. On September 23, 1999, the Court issued an order remanding the matter to Customs to decide the issues pertaining to copyright infringement pursuant to 28 U.S.C. § 2643(c)(1)(1994).

On November 17, 1999, the Court conducted a telephone conference and heard arguments by the parties with regard to Luxury's application for an injunction. On November 18, 1999, this Court issued an injunction prohibiting the Commissioner of Customs, Raymond Kelly, and the Port Director of the Los Angeles Customs District, Irene Jankov, from releasing any funds or other security until the Court reached a decision pertaining to copyright infringement and Customs' detention of the merchandise. On

---

[1] The facts surrounding this action are detailed in this Court's previous opinion and familiarity with them is presumed. See Luxury Int'l, Inc. v. United States, 23 CIT ___, 69 F. Supp. 2d 1364 (1999).

November 22, 1999, the Court issued an order prohibiting Customs from instituting seizure proceedings pending resolution of the case or until the Court granted permission to commence seizure proceedings, and further decreed that the failure of Customs to institute seizure proceedings after the finding of infringement by Customs would not constitute a breach or violation of any Customs regulation.

### JURISDICTION

The Court retains jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1994), which provides the Court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 515 of the Tariff Act, 19 U.S.C. § 1515 (1994 & Supp. III 1997), details the process by which Customs modifies and performs administrative review of its decisions and "provides for the allowance or denial of a protest filed pursuant to section 514 of the Tariff Act of 1930." Lowa, Ltd. v. United States, 5 CIT 81, 84, 561 F. Supp. 441, 444 (1983) (citation omitted).

## DISCUSSION

### I.  Entitlement to Protect Copyright

Elorg licenses the intellectual property in its trademarks and copyright registrations to various entities, including Nintendo of America, Inc. ("Nintendo"). See Ex. in Supp. of Luxury's Resp. Re Infringement ("Luxury's Ex.") O at 1.  Nintendo is the copyright claimant for the copyright at issue, PAU 1,284,318 ("Copyright"), and recorded it with Customs under Customs Recordation No. 89-170. See id. at 4.  The Copyright is based on  four underlying copyrights: Copyright Registration Nos. PA 412,170; PA 1,214,036; PA 1,214,035; and PA 412,169.  See id.  The four underlying copyright registrations are held by Elorg and cover the underlying computer code and the audio-visual aspects of the Tetris game. See id.  In the Copyright's registration, Nintendo identifies it as a derivative work based on Elorg's PA 412,170 and describes the additional material as some "[n]ew music and background sounds; some new visual display; [and the] computer program" that enables the Tetris game to be played on Nintendo's NES system.  Luxury's Ex. D at 2.

Luxury claims that neither Elorg nor Tetris was identified as the owner of the Copyright, that neither recorded the Copyright for import protection and that, therefore, neither entity was entitled to file a demand for exclusion, post a bond or participate in the administrative proceedings.  See Luxury's Response Re Infringement

("Luxury's Response") at 2-3.  Luxury claims that only Nintendo of America, Inc. ("Nintendo") is entitled to perform those actions because it was the entity who filed the Copyright with the Copyright Office and recorded it with Customs for import protection.  See id. at 3.

Section 133.31 of part 19 of the Code of Federal Regulations provides that "[c]laims to copyright which have been registered in accordance with the Copyright Act . . . may be recorded with Customs for import protection."  19 C.F.R. § 133.31(a) (1998).  Section 133.31 further provides that the entity eligible to record for import protection is the "copyright owner, including any person who has acquired copyright ownership through an exclusive license, assignment, or otherwise, and claims actual or potential injury . . . ."  19 C.F.R. § 133.31(b).

In this case, a dispute arises because the party who recorded the Copyright for import protection, Nintendo, was not the same party who took the measures outlined in 19 C.F.R. § 133.43 (1998) to protect the Copyright; Elorg and Tetris took steps to protect the Copyright.  The regulations, however, do not state that only the copyright owner who recorded for protection is permitted to file a written demand, post a bond and participate in the administrative proceedings.  See 19 C.F.R. § 133.43.  The Customs regulations simply provide that imported articles detained on

suspicion that they are infringing "will be released to the importer unless . . . the copyright owner files . . . a written demand for the exclusion from entry . . . [and a] bond" within specified time limits. 19 C.F.R. § 133.43(b)(6). The regulations also provide that the "copyright owner" has the right to participate in the administrative proceedings for the disputed claim of infringement. 19 C.F.R. § 133.43(d)(1). The regulations do not require that the copyright owner who recorded the copyright be the same copyright owner to protect the copyright. Thus, the failure of Elorg and Tetris to record the Copyright will not prevent them from enforcing their rights if they can properly be considered copyright owners.

The term "'[c]opyright owner,'" with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." 19 C.F.R. § 133.31(b). It includes "any person who has acquired copyright ownership through an exclusive license, assignment, or otherwise, and claims actual or potential injury . . . ." Id. It cannot be disputed that Elorg is a copyright owner within the meaning of the regulations. The Copyright is registered under the name of Nintendo, who is a licensee of Elorg.[2] The Copyright registration, however, states

_____

    [2]    Nintendo of America, Inc. and its parent, Nintendo Co., Ltd., were the exclusive worldwide licensees of Elorg for the versions of the Tetris game until 1996, after which they became the non-exclusive sub-licensee of The Tetris Company, LLC. See Def.-

that an earlier version of the Copyright, namely, PA 412,170, has already been registered. See Luxury's Ex. D at 2. PA 412,170 is owned by Elorg and encompasses most of the intellectual property which forms the basis of the Copyright. In fact, the Copyright differs from Elorg's PA 412,170 only in some "'new music and background sounds; some new visual display, [and the] computer program' that allows the TETRIS game to be played on Nintendo's NES home-entertainment system." Luxury's Ex. O at 4. Thus, Elorg is properly considered a copyright owner by virtue of its ownership of the intellectual property upon which the Copyright is based.

Similarly, Tetris is a copyright owner under the regulations because it has held Elorg's exclusive rights to license the Tetris game to third parties in both the United States and other countries worldwide since 1996. See Def.-Intervenors' Rebuttal to Luxury's Resp. Re Infringement, Ex. A ¶3 and Ex. B ¶3.

Furthermore, distinguishing between the copyright owner who records for import protection and the copyright owner who acts to protect its copyright makes little sense in this case. The purpose of § 133.43 is to provide notice to persons claiming an interest in a copyright of a potentially infringing importation so that they can defend the copyright. See 17 U.S.C. § 602(b) (1994); 19 C.F.R.

_____

Intervenors' Rebuttal to Luxury's Resp. Re Infringement, Ex. A ¶3 and Ex. B ¶3.

§ 133.43.  That purpose was served here when Customs notified Nintendo of the nature of Luxury's goods and Nintendo notified Tetris, the holder of the exclusive rights to license the Tetris game, and Elorg, the holder of the underlying copyrights upon which the Copyright was based.

In sum, because Elorg owns the rights at issue and Tetris is the exclusive licensee, both entities fall within the meaning of "copyright owner" as defined by 19 C.F.R. § 133.31.  Because the regulations do not require that the copyright owner who recorded the copyright be the same copyright owner to protect the copyright, and because Elorg and Tetris are copyright owners, Elorg and Tetris were entitled to take the steps provided in Customs regulations to keep Luxury's merchandise from entering the United States stream of commerce.

## II.  Timeliness of Demand for Exclusion and Posting of Bond

Having found that Elorg and Tetris were entitled to file a demand for exclusion, post a bond and participate in the administrative proceedings, the Court proceeds to the issue of whether Tetris' demand for exclusion and posting of the bond were timely.

According to 19 C.F.R. § 133.43(b)(6), one who claims that his copyright is being infringed upon must make a "written demand for

the exclusion from entry of the detained imported article" and also post a bond "conditioned to hold the importer or owner of the imported article harmless from any loss or damage resulting from Customs detention in the event the Commissioner or his designee determines that the article is not an infringing copy." 19 C.F.R. 133.43(b)(6)(1998). The written demand and bond must be filed with the port director within 30 days of Customs' notice that the imported articles will be released to the importer unless such action is taken. See id.

Luxury's position is that Elorg and Tetris did not file a timely demand for exclusion nor post a timely bond. See Luxury's Resp. at 14. Luxury maintains that the copyright owner had until October 4, 1998, 30 days from the date of Customs' September 4, 1998 notice of detention, to file a written demand for exclusion of the LCD games and to post a bond. See Luxury's Compl. at 3. Elorg and Tetris, on the other hand, contend that because October 4, 1998 was a Sunday, they had until October 5, 1998 to file a written demand for exclusion and to post a bond. See Def.-Intervenors Mot. To Dismiss ("Mot. to Dismiss") at 9.

Tetris alleges that on October 5, 1998, it attempted to post the bond by tendering $150,000 in cash to Customs, which Customs refused to accept. See id. On October 6, 1998, however, Customs indicated that it would accept cash and accepted it. Elorg and

Tetris argue that Customs' error in not accepting the permissible cash security in lieu of a bond caused the delay in complying with the regulations and that they should not suffer the consequences of Customs' mistake.  See id. at 11.

The court takes judicial notice of the fact that October 4, 1998 was a Sunday.  See Fed. R. Evid. 201(b); Norman G. Jensen, Inc. v. United States, 33 Cust. Ct. 377, 1954 WL 7344 (1954). Because October 4, 1998 was a Sunday, Tetris had until October 5, 1998 to file a written demand for exclusion and to post a bond. See Armstrong v. Tisch, 835 F.2d 1139 (5th Cir. 1988) (citing Street v. United States, 133 U.S. 299 (1890)) (holding that when last day of federal regulation fell on weekend or holiday, time limit was extended until end of next business day).  Because Tetris' written demand for exclusion was delivered to Customs on October 5, 1998, it was timely.

Tetris also posted a timely bond as required by law.  Tetris tendered a timely check on October 5, 1998, but Customs refused to accept a cash payment.  Customs was in error in not accepting the cash, as the regulations provide that cash may be posted in lieu of a bond.  See 19 C.F.R. §113.40 (1998) ("In lieu of sureties on any bond required or authorized by any law, regulation, or instruction[,] . . . the port director is authorized to accept United States money . . . in an amount equal to the amount of the

bond."). Tetris fulfilled its obligation under 19 C.F.R. § 133.43(b)(6) and there is no reason why Tetris should be penalized for Customs' error. Customs was correct in denying Luxury's protest of its decision to continue to detain the games because the written demand for exclusion and the posting of the bond were timely.

### III. Customs' Determination of Infringement

Luxury had refused to participate in the proceedings commenced by Customs to determine whether the LCD games infringe on Elorg/Tetris' copyright. Instead of waiting for Customs' determination on the issue of infringement, Luxury commenced this action contesting the denial of its protest. Luxury's filing of the action contesting Customs' denial of its protest was premature and circumvented the proper course of Customs' administrative procedure.

The Court, therefore, remanded the matter to Customs in order to allow the administrative process to resume its normal course, that is, to allow Customs to determine whether Luxury's LCD games infringed on the copyright of Elorg/Tetris. Specifically, the Court ordered Customs to "determine administratively whether there is infringement of ZAO's copyright." Luxury, 23 CIT at___, 69 F. Supp. 2d at 1370.

Customs complied with the Court's order to make a determination as to infringement, which resulted in Customs finding that Luxury's LCD games infringed on the Copyright. See Mem. to Director, Los Angeles/Long Beach Support from Acting Chief, IPR Branch (Nov. 4, 1999). Customs acted properly pursuant to its power to make determinations concerning copyright infringement while fulfilling its duty to prohibit importation of infringing merchandise. See Miss America Org. v. Mattel, Inc., 945 F.2d 536, 538-39 (2d Cir. 1991).

The proper procedure upon Customs finding an infringement mandates that "the port director shall seize the imported article" and return the bond to the copyright owner. 19 C.F.R. § 133.44(a) (1998). Accordingly, the port director must seize the LCD games and return the bond to Tetris.

### CONCLUSION

Since Customs has decided that Luxury's LCD games infringe on the copyright of Elorg and Tetris, the Court orders that Customs seize the LCD games and return the bond to Tetris.  This case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated: March 17, 2000
       New York, New York