**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 96-60071**

**Summary Calendar**

---

**JACKIE H. JONES; PALMA H.
BONAVENTURE; JAMES MCKEE HIGGINS,**

**Plaintiffs-Appellees,**

**VERSUS**

**GEORGIA PACIFIC CORPORATION; THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA,**

**Defendants-Appellants.**

---

**Appeal from the United States District Court
for the Southern District of Mississippi**

---

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

W. J. Higgins' group life insurance policy with his company terminated when he reached age 65. The policy provided that for 31 days following his sixty-fifth birthday he had the right to purchase an individual life insurance policy without a medical examination. If he died during that period he would receive death benefits just as if he had bought the new policy. Higgins did not purchase the individual policy within the 31-day period, and he died on the thirty-second day following his sixty-fifth birthday.

Because the thirty-first day after his birthday was a Sunday, his family argues that he should have been covered for an extra day. Applying federal common law, we hold (1) that the unambiguous terms of the policy control and (2) that Higgins was not covered by the policy on the day he died. Therefore, we reverse the judgment of the district court and render judgment in favor of Georgia Pacific and Prudential.

## BACKGROUND

W. J. Higgins worked for Georgia-Pacific Corporation until he was disabled in 1978. As a Georgia-Pacific employee, Higgins was covered by a group life insurance plan issued by Prudential Insurance Company. After being disabled, Higgins was allowed to remain in the group plan until he reached age 65. Higgins turned 65 on September 23, 1993.

Shortly before his sixty-fifth birthday, Prudential sent Higgins a letter informing him that his group life insurance coverage would terminate on September 23, 1993, and that he had 31 days from his birthday in which to convert his insurance to an individual policy, by making an application and paying the first

premium during the 31-day period.[1]

The "thirty-first day immediately following" Higgins' sixty-fifth birthday was Sunday, October 24, 1993.  Higgins neither made application to acquire an individual policy nor submitted the first premium by that date.  Likewise, on Monday, October 25, neither Higgins nor any of his heirs made application for the individual policy nor submitted the first premium required for such individual policy.  Higgins died on Monday, October 25, 1993, at approximately 3:20 p.m., and that day was the thirty-second day after his sixty-

---

[1]The relevant provisions of the group insurance policy state:

PRIVILEGE TO ACQUIRE INDIVIDUAL POLICY. -- The rights and benefits of this section are for a Participant ceasing to be a covered individual under the circumstances described in (a) or (b) below.  **The acquirement period is the thirty-one day period immediately following the date of such cessation**.

(a) Privilege in Event of Termination of Membership in Eligible Classes. -- This applies if the Participant ceases to be a covered individual and his Participant Life Insurance under the Group Policy then ceases by reason of termination of his membership in the classes eligible for such insurance under the Group Policy.  He shall be entitled to have issued to him by the Insurance Company, without evidence of insurability, an individual policy of life insurance only, without disability or other supplementary benefits; **but the policy shall be obtainable only if written application and the first premium payment for it are made to the Insurance Company within the acquirement period**. . . .

* * * *

(e) Insurance Protection During Limited Period. -- If a Participant is entitled by the terms of this Coverage to acquire an individual policy **but dies within the thirty-one day period immediately following the date he ceased to be a covered individual**, the amount of insurance which he would have been entitled to have issued to him under the individual policy will be paid as a claim under the Group Policy whether or not application for the individual policy has been made.

Prudential Insurance Policy at 10 (emphasis added).

fifth birthday.

After Higgins' death, his widow and two children ("Higgins' heirs" or the "heirs") sought payment on the policy from Prudential.  They argued that because the thirty-first day after Higgins' sixty-fifth birthday was a Sunday (a day on which Prudential's offices were closed), Higgins had no reasonable opportunity to comply that day, so the acquirement period (and insurance coverage) should be extended one more day.  Prudential refused the claim, and Higgins' heirs sued Georgia-Pacific and Prudential (the "companies") in Mississippi state court.  The companies removed the case to federal district court pursuant to 28 U.S.C. § 1331, based upon the existence of a federal question under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq*.

The parties stipulated that there were no genuine issues of material fact and cross-moved for summary judgment.  The district court denied the companies' motion for summary judgment and granted Higgins' heirs' motion for summary judgment.  The district court agreed with the heirs that because the final day of the acquisition period ended on a Sunday, the period should be extended for one day.  Thus, in the district court's view, Higgins died within the acquisition period and was still covered by the life insurance policy.  The companies filed a timely notice of appeal.

**DISCUSSION**

Our review of this appeal turns on two questions: First, are the relevant provisions of the policy ambiguous; and second, under

4

federal common law, when a private contract provides that an offer is to be accepted within a certain number of days, and the last day falls on a Sunday, must the offeree accept by that day, or is he given until the next business day to accept.  We hold that the offeree must accept by the last day provided for in the offer, even if it is a Sunday.

We begin by noting that federal common law, rather than state law, applies in this case.  *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451.[2]  In ascertaining the applicable federal common law, we may "draw guidance from analogous state law."  *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir. 1994) (internal quotation omitted).  "We must nevertheless bear in mind that, in so doing, we may use state common law as a basis for new federal common law ... only to the extent that state law is not inconsistent with congressional policy concerns."  *Todd*, 47 F.3d at 1451 (internal quotation and brackets omitted; ellipses in original).

We have held that in construing ERISA plans we follow the rule of *contra proferentem*, which dictates that "when plan terms remain ambiguous after applying ordinary principles of contract interpretation, courts are to construe them strictly in favor of the insured."  *Todd*, 47 F.3d at 1452.  In construing the contract language "[w]e interpret ERISA plans in an ordinary and popular

---

[2]  The life insurance plan is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1002(1), so federal law preempts state law.  29 U.S.C. § 1132(e)(1).  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989).

5

sense as would a person of average intelligence and experience."
*Id*. n.1 (internal quotation omitted).

After reviewing the insurance policy we hold that the provisions at issue in this case are not ambiguous. A person of ordinary intelligence and experience would understand what the policy provides and requires of the insured: after a person ceases being a covered individual in the group life insurance plan, he has a 31-day "acquirement period" in which to apply for and pay the first premium on an individual life insurance plan. If he does not make such application and pay such premium he will not be entitled to an individual policy. Likewise, if the individual "dies within the thirty-one day period immediately following the date he ceased to be a covered individual" under the group policy, then his beneficiaries will receive payment under the group policy as if he had applied for and paid the premium on the individual policy. These provisions are not ambiguous.

In this case, the starting date of this 31-day period is the date of Higgins' sixty-fifth birthday -- a fixed date, both as to the day of the month and the day of the week. The period consists of the 31 days immediately following the starting date. The qualifying phrase "immediately following" can have no other meaning than the 31 days in their normal and natural sequence, without concern as to the days of the week or to the fact that the first day or the thirty-first day or any day in between may be a Saturday or a Sunday or a holiday or a Monday or a Wednesday. The Higgins' heirs argued, and the district court concluded, that these

6

provisions were ambiguous because they do not state what would happen if the thirty-first day fell on a Sunday; and that, therefore, construing the policy provisions against the company and in favor of the insured, the court should, in effect, write into the policy a provision that would extend the period for one day if the thirty-first day falls on a Sunday. We disagree. As stated earlier, these provisions are not ambiguous; what they do not say cannot render what they do say ambiguous.

Higgins' Heirs also urge us to follow the legal maxim *dies dominicus non est juridicus* (Sunday is not a day in law). They argue that the general common law rule is that when an act is to be performed within a given number of days and the last day falls on Sunday, the person charged with acting has the following day to comply. We note, however, that what is called a common law rule more often than not derives from state statutes rather than common law principles. Most of the state cases cited by Higgins' heirs involve statutes providing for an extra day if the last day is Sunday. *See*, *e.g.*, *Flowers v. Provident Life & Accident Ins. Co.*, 713 S.W.2d 69, 71 (Tenn. 1986); *First National Bank of Oregon v. Mobil Oil Corp.*, 538 P.2d 919, 920 (Or. 1975); *Brooks v. Hicks*, 197 S.E.2d 711 (Ga. 1973). Counsel for the Higgins' heirs have not cited, and our research fails to disclose, any federal statutory provisions similar to these state statutes. The closest federal provision is Federal Rule of Civil Procedure 6(a). This rule provides that in computing time in federal civil cases, "[t]he last day of the period . . . shall be included, unless it is a Saturday,

a Sunday, or a legal holiday. . . ."[3]  However, Rule 6(a) by its express terms applies only to "any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court or by any applicable statute."  We note also that **Aron** expressly recognizes that Rule 6 does not apply ordinarily to private contracts.  **Id**. at 417.

The Higgins' heirs urge, and the district court so concluded, that the federal courts should adopt and apply Rule 6 to all time periods, even those in private contracts.  We decline to do so for the following reasons:

a.    Under the facts in this case we are dealing with the period for acceptance in a private option contract.  As such, "the offeror has full control of its terms, . . . [including] the length of time during which the power of acceptance shall last."  CORBIN ON CONTRACTS §2.14 at 195 (rev. ed. 1993).  In an option contract, "the power of acceptance may be exercised only within the time stated in the offer."  **Id**. § 2.15 at 201.  The only exception is in states where a statute provides for an extra day if the last day of acceptance falls on a Sunday or legal holiday.  **Id**. § 2.14 at 201.

---

[3]   We are aware that our Court has allowed the additional day when the last day for filing a suit under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300, *et seq.*, fell on a Sunday.  **J. Aron & Co. v. S/S OLGA JACOB**, 527 F.2d 416 (5th Cir. 1976).  We believe that **Aron** is distinguishable because it dealt with the limitations period for filing a lawsuit, not the time limit for exercising an option in a private contract.  This limited reading of **Aron** is supported by the fact that our Court has never cited **Aron** outside the limitations period context.

b.     We find no provision of the statutes of the State of Mississippi, which is the state where these private contracts were entered into and contemplate performance, which purports to adopt a "don't count Sunday" rule for private contracts in that state.

c.     There is no comparable federal statute applicable to private contracts and we find no federal cases which purport to establish or adopt a "don't count Sunday" rule as a matter of federal common law applicable to private contracts.

d.     Except for suicides, the date of an individual's death is not a matter of choice.  When death occurs the day following the expiration of insurance coverage there is a natural human reaction to agonize over the fortuitousness of that circumstance.  Such is, however, the inherent result of defining limits and boundaries for events, i.e. some will fall just inside and some will fall just outside the boundaries.  We can perceive no valid public policy to be served by saying that deaths which occur on a Monday following expiration of such a period on Sunday will be given protection and coverage but deaths which occur on Tuesday following expiration of such a period on Monday will not.

e.     Finally, as to the time for performance by Higgins of those acts which would have resulted in his getting new coverage under an individual policy, the problem is not when such performance could have occurred but the fact that such performance never occurred; and for the court to apply a "Sundays don't count rule" to the facts of this case doesn't cure the fundamental problem of non-performance.

**CONCLUSION**

Under federal common law there is no rule providing an extra day for one to accept a private contract when the last day for acceptance falls on a Sunday. Therefore, the last day of the acquisition period was the thirty-first day after Higgins' sixty-fifth birthday: Sunday, October 24, 1993. By the express terms of the policy, the extension of benefits under the group policy ended on that Sunday. Because Higgins did not apply for an individual life insurance policy within the acquisition period, he was not covered by any policy when he died on Monday, October 25, 1993. Accordingly, the district court's grant of summary judgment in favor of Higgins' heirs is REVERSED and summary judgment is RENDERED in favor of Prudential and Georgia-Pacific.