# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

---

No. 96-60620

---

PATSY L.  JACKSON,

Plaintiff-Appellee-Cross-Appellant,

VERSUS

TRANSAMERICA OCCIDENTAL LIFE INS. CO.,

Defendant-Appellant-Cross-Appellee,

and

DELCHAMPS, INC.

Defendant-Appellee-Cross-Appellant.

---

Appeal from the United States District Court
For the Southern District of Mississippi

(1:91-cv-156PR)

---

July 1, 1998

Before EMILIO M. GARZA,* STEWART, and DENNIS, Circuit Judges.

---

* Emilio M. Garza, Circuit Judge, dissents.

DENNIS, Circuit Judge.[**]

Appellant Transamerica Occidental Life Insurance Company appeals the district court's determination that Patsy L. Jackson is entitled to death benefits under an accidental death and dismemberment policy issued by Transamerica to Jackson's husband's employer, Delchamps, Incorporated. Appellant Delchamps appeals the district court's retention of jurisdiction in order to revisit the amount of damages it is to pay Jackson in the event that the Transamerica policy benefits are not available for any reason. Appellee Jackson files a cross-appeal with respect to the amount of attorneys' fees awarded her by the district court. We affirm the district court's judgment finding Jackson is entitled to benefits under the Transamerica policy and the award of attorneys' fees; however, we amend the judgment to delete the retention of jurisdiction.

I.

Willie Joe Jackson (Mr. Jackson) began working for Delchamps, Incorporated (Delchamps) in September 1980. He was eventually promoted to a salaried management position. In November 1986, Mr. Jackson suffered an employment related back injury. As a result, Delchamps placed Mr. Jackson on disability leave and provided him workers' compensation benefits. On February 9, 1988, Mr. Jackson died by accidental carbon monoxide poisoning unrelated to his employment. Mr. Jackson did not perform his job duties after his November 1986 injury.

---

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 1987, while Mr. Jackson was on disability leave, Delchamps changed the carrier of the accidental death and dismemberment insurance it provided as an employee benefit from State Mutual Life Assurance Company of America (State Mutual) to Defendant Transamerica Occidental Life Insurance Company (Transamerica). The Transamerica policy became effective on August 1, 1987. After Mr. Jackson's death, his wife, Patsy L. Jackson (Jackson), made a claim for death benefits under the Transamerica accidental death and dismemberment policy. Although Delchamps had continued paying premiums on behalf of Mr. Jackson until his death, Transamerica denied Jackson's claim on the basis that Mr. Jackson was never eligible for coverage under its policy as he was not an active full-time employee working at least 30 hours per week as required by the "Eligible Persons" provisions of the policy.

After Transamerica refused to pay the accidental death benefits, Jackson filed suit in state court on March 11, 1991, seeking to collect these benefits from either Transamerica or Delchamps. In addition, she sought payment from Delchamps for other benefits allegedly due Mr. Jackson prior to his death because of his disability. The defendants in the court below removed the case to federal court.

After removal, Transamerica answered Jackson's complaint by pleading that no coverage existed as Mr. Jackson was not an "active, full-time employee" under the Eligible Persons provision of the policy. On December 2, 1994, the district court denied Delchamps' motion for summary judgment and instructed that the case be set for trial. Subsequently, Transamerica filed its own motion for summary judgment on August 23, 1995. On September 6, 1995, Jackson filed a response to Transamerica's motion for

3

summary judgment and, in addition, filed her own motion for summary judgment. At the pretrial conference, the trial court denied Transamerica's motion for summary judgment and "tentatively" granted Jackson summary judgment; however, the court reserved its final ruling pending a full trial as the case was to be tried before the court.

In tentatively granting Jackson's motion for summary judgment, the trial court relied on the "Replacement of Coverage" provision of the Transamerica policy. If the required premiums have been paid, this provision waives the active employment and effective date requirements of the Transamerica policy for persons covered by the accidental death and dismemberment policy in effect prior to the Transamerica policy on the date the prior policy ceased to be effective.

After trial, the district court rendered judgment in Jackson's favor against Transamerica in the sum of $136,000 for the policy benefits plus prejudgment interest for a total award of $250,241.82. The court further ordered Delchamps to pay Jackson $5,000 in penalties as a result of its failure to provide plan documents as required by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(c). In oral reasons given on November 16, 1995, the court ordered the parties to brief the question of the reasonableness and appropriateness of attorneys' fees. In its written final judgment, filed August 29, 1996, the court found Jackson to be entitled to $28,875 in attorneys' fees and $2,934.95 in costs with eighty percent assessed to Transamerica and twenty percent to Delchamps. The trial court further purported to retain jurisdiction to revisit the judgment against Delchamps in the event that the Transamerica policy benefits were not available to Jackson for any reason. In rendering judgment

4

against Transamerica, the district court found the policy to be ambiguous primarily because the word "active" within the Eligible Persons portion of the policy was not defined. The district court reasoned that the term "active" could "apply to working"; however, it also could have been "intended to exclude part-time help or sporadic help who might work a few months and terminate and then be reemployed."[1] As a result, the court construed the terms of the policy against the insurer and found the testimony of the Delchamps plan administrator, Heidi Eckert Finchem, probative with respect to coverage. Ms. Finchem testified that Delchamps had considered Mr. Jackson an active employee and had continued to pay premiums for his coverage during Mr. Jackson's approved leave of absence. In addition, Ms. Finchem testified that Mr. Jackson had worked a minimum of thirty hours per week until he became disabled.

With respect to the policy's requirement that an employee must work at least thirty hours per week to be eligible for coverage, the district court found Ms. Finchem's

---

[1] The district judge explained:

> [the policy] doesn't say whether he's an active employee from the standpoint that he's an active employee drawing workmen's compensation benefits or whether he's an active employee in any manner. It could mean that active applies to working, but they don't say that. They could have very easily said here that this does not cover someone who's disabled and drawing workmen's compensation benefits. They didn't say that.

The court continued:

> [t]here is no definition at all of active. One could easily conclude that this language was intended to exclude part-time help, or sporadic help who might work a few months and then terminate and then be reemployed.

5

testimony to be undisputed.  The district court evidently interpreted the policy to require that the employee's normal work week be at least thirty hours per week and not that the employee must actually work thirty hours in order to maintain coverage during each week.

As an alternative holding, the court concluded that Mr. Jackson was covered under the Replacement of Coverage  provision of the Transamerica policy.  Although the parties did not introduce the prior State Mutual policy, the court held that the uncontradicted testimony of the plan administrator  satisfied the plaintiff's burden of proving coverage under the prior policy.

Transamerica filed its notice of appeal on September 11, 1996.  Jackson filed a cross-appeal on September 24, 1996, with respect to attorneys' fees.  Delchamps filed its own notice of appeal on September 27, 1996.  Delchamps asserts that it is satisfied with all aspects of the court's judgment of August 29, 1996, excepting the district court's retention of jurisdiction.

II.

The standards of review usually applicable to civil cases tried without a jury govern our consideration of the district court's judgment in the instant case.

> Questions of law, such as a court's interpretation of an ERISA plan when the plan's terms are clear and there is no grant of interpretative authority to a plan administrator--or even the preliminary determination whether an ERISA plan's language is silent or ambiguous--are reviewed de novo; findings of fact, such as the intent of the parties regarding an ERISA plan, are reviewed for clear error.

6

Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst, 102 F.3d 1368, 1373 (5th Cir. 1996).

III.

Federal common law governs the construction of ERISA plans. Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1451 (5th Cir. 1995) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987)). In construing such plans, courts are to look to the "'ordinary and popular sense'" of the term "'as would a person of average intelligence and experience.'" Todd, 47 F.3d at 1452, n.1 (quoting Meredith v. Allsteel, Inc., 11 F.3d 1354, 1358 (7th Cir. 1993), rev'd on other grounds, Ahng v. Allsteel, Inc., 96 F.3d 1033 ( 7th Cir. 1996)). Language in insurance contracts is given "its ordinary and generally accepted meaning" if one exists. Id.

A contract is ambiguous when "it is reasonably susceptible to more than one meaning" after established rules of construction have been applied. United Paperworkers Int'l Union v. Champion Int'l Corp., 908 F.2d 1252, 1255-56 (5th Cir. 1990). If a court finds the contract to be ambiguous, the determination of the parties' intent becomes a question of fact and extrinsic evidence of intent may be introduced. Id. Under the rule of contra proferentum, courts must construe plan terms in favor of the insured when such terms remain ambiguous after ordinary principles of contract interpretation have been applied. Jones v. Georgia-Pacific Corp., 90 F.3d 114, 116 (5th Cir. 1996) (citing Todd v. AIG, 47 F.3d at 1451-52).

The Transamerica policy provides in pertinent part:

7

**Eligible Persons**

The following persons shall be eligible for insurance under the Policy:

| Class | Description of Class |
|---|---|
| I | All active, full-time, salaried employees of the Policyholder not included in Class II. |
| II | All other active, full-time employees of the Policyholder not included in Class I. |

"Employee" means an individual who is regularly employed by the Policyholder in the usual course of his business and who works at least the number of hours per week established by the Policyholder as the normal work week, but in no event less than 30 hours per week.  Benefits reduce fifty (50%) percent at age 70, unless otherwise agreed upon.

**Exception:** Persons who are in full time service in any armed forces for more than 30 days shall not be eligible for insurance under the policy.

. . . .

## DEFINITIONS

**FOR ALL BENEFITS:**

**Policyholder** means the Employer named in the front page of this Certificate.

**Policy Year** means the period from the Policy Effective Date, or from any Anniversary Date, to the next Anniversary Date.

**Member, Insured Person** or **You** means a person who is insured under the Policy as an employee of the Policyholder.

**Active Work** or **Actively at Work** means being on the job as required of an employee of the Policyholder.

. . . .

**WHEN INSURANCE STARTS**

**Eligible Status.  You are eligible for insurance if you are:**  (1) a full-time, active employee of the Policyholder and; (2) working a minimum of 30 hours per week.

**Exception:**  You are not eligible if you are in full time service in any armed forces for more than 30 days.

**Your Effective Date:**  Subject to the PROVISO, your insurance will start on the date you become eligible.

. . . .

**PROVISO** If you are not Actively at Work on the date your insurance would otherwise start, it will not start until the date you return to Active Work.  This also applies when your insurance is being increased or benefits added while you are insured under the Policy.

. . . .

**REPLACEMENT OF COVERAGE**

The following provisions shall apply to each person who had valid coverage under the Former Plan on the date it ceased and is in a class which is eligible on the Policy Effective Date.  If the required premiums are paid, the person shall become insured on such Effective Date, whether or not the active employment or effective date requirement have been met.

**Former Plan** means the group policy which is replaced by this Policy immediately after the Former plan terminated.

On appeal, Transamerica argues that the policy is not ambiguous as the term "active" is defined as "being on the job."  Using this definition, Transamerica asserts a person of ordinary intelligence and experience would understand that the eligibility and effective date policy provisions exclude coverage for any employee who was not in fact physically at work on the policy's effective date and presently working a minimum of 30 hours per week.  Applying this argument to the instant case, Transamerica asserts that Mr. Jackson was never covered as he was never "actively at work," "on the job," or working a minimum of thirty hours per week on or subsequent to the policy's effective date.  Furthermore, Transamerica argues that even if the policy is ambiguous, the unilateral intent of one party to the insurance contract, i.e., Delchamps,' is not determinative of the policy's meaning.

With respect to the district court's alternative holding finding coverage pursuant to the Replacement of Coverage provision of the Transamerica policy, Transamerica

9

asserts that Jackson put forth no competent evidence demonstrating that Mr. Jackson was covered by the State Mutual policy on July 31, 1987. Transamerica argues the district court's reliance on the plan administrator's testimony regarding this issue was erroneous as she only testified that Mr. Jackson "was covered" under the State Mutual policy and did not explicitly state that Mr. Jackson was covered on the date that the policy ceased to be effective, July 31, 1987.

After applying established rules of contract interpretation, we agree with the district court's conclusion that the coverage language of the policy is ambiguous. There are two conditions to coverage under the Transamerica policy relevant to this case. First, one must be an "active, full-time employee" of Delchamps who works at least the number of hours per week that Delchamps establishes as the normal work week, but in no event less than thirty hours per week. Second, one must be "Actively at Work" on the effective date of the policy, August 1, 1987.[2]

As the district court concluded, the word "active" is not specifically defined within the policy and conceivably could have one of several meanings. For example, an ordinary person could understand this language to provide coverage for any Delchamps' employee who is not currently laid-off, terminated, or retired. Alternatively, the policy language could mean that employees must be physically present and working at the employer's place of business or at least be capable of working at the employer's place of business. Transamerica easily could have clarified the meaning

---

[2] If one is not "Actively at Work" on the policy's effective date, coverage does not begin until one returns to "Active Work."

10

of this term by specifically defining it to exclude anyone temporarily or permanently disabled or drawing workers' compensation benefits, but it did not. Cf. Lickteig v. Business Men's Assurance Co. of America, 61 F.3d 579, 582 (8th Cir. 1995) ("active employee" defined as "an Employee who is not on Leave of Absence, Sick Leave, Lay-Off, Quit or Discharge, but includ[es] . . . an Employee who is on vacation or . . . involved in a Temporary Work Stoppage.")

Transamerica argues that the policy is not ambiguous with respect to the term "active" because the policy contained definitions of the phrases "Active Work" or "Actively at Work." This argument, however, is not convincing. First, the phrases "Active Work" and "Actively at Work," unlike the word "active," do not appear in the Eligible Persons provision. If Transamerica had wished to include the definition provided for these particular phrases within the Eligible Persons provision of the policy, it would have inserted either the phrase "Active Work" or "Actively at Work" as it did in the "Proviso" to the "When Insurance Starts" portion of the policy. Alternatively, Transamerica could have provided a definition for the word "active" in the definitional section of the policy.

Even if the policy is read as intending that the terms "active," "Actively at Work," and "Active Work" should be understood as synonymous, the ambiguity remains. The policy does not merely define "Actively at Work" or "Active Work" as being "on the job," but defines both as "being on the job as required of an employee of the Policyholder." (Emphasis added). In other words, to be eligible for coverage the employee must be on the job only as demanded by the employer. Thus, the provisions on which

11

Transamerica relies to alleviate the ambiguity created by the policy's failure to define the word "active" only leave the term's meaning within the discretion of the employer and open to more conjecture.

The policy's requirement that an employee be "Actively at Work" on the policy's effective date, included within the Proviso, is ambiguous for similar reasons. Inserting the definitions provided in the policy, the Proviso reasonably can be construed to mean that Delchamps decides when insurance coverage begins for each employee as it decides whether an employee is classified as "Actively at Work."[3]  Such a construction does not render the provision meaningless as Transamerica argues;  instead, it simply makes Delchamps' employee classification policy determinative of coverage on the effective date of the policy with respect to individual employees.   Even if we conclude that the Proviso could also be read to require that an employee be physically at work on the effective date of the policy in order to be covered, this simply confirms our conclusion that the coverage provisions of the policy are, at best, ambiguous.

Policies using more precision and clarity in defining "Actively at Work" avoid such ambiguity.   See, e.g.,  Turner v. Safeco Life  Ins. Co., 17 F.3d 141, 143, n.2 (6th Cir. 1994) ("actively at work,"  with respect to an employee who "does not report" for work at the usual place of work or who "normally works at home,"  means that "the employee

---

[3] Contrary to the Transamerica policy, the policies in the cases on which Transamerica relies did not link the "Actively at Work" requirement with the phrase "on the job as required of an employee of the Policyholder."  See  Edwards v. Great-West Life Assurance Co., 20 F.3d 748, 749-50 (7th Cir.), cert. denied, 513 U.S. 962 (1994);  Todd v. Dow Chemical Co., 760 F.2d 192, 193-196 (8th Cir. 1985).

is neither (a) hospital confined; nor (b) disabled and unable to: (1) report to a place of work outside of the employee's home; and (2) perform all usual and customary duties on a regular basis"); Carazo v. Jefferson Pilot Life Ins. Co., 764 F. Supp. 4, 6 (D. Puerto Rico), aff'd, 953 F.2d 632 (1st Cir. 1991) ("actively at work" means an insured person is "able to do the normal tasks of his job on a full time basis for a full work day on the day his insurance . . . is to begin . . .  at one of his employer's normal places of business" or other required location  and is not "absent from work because of a leave of absence or temporary lay-off");  Ollson v. Darling and Co., 759 F. Supp. 381, 384 (E.D. Mich. 1991)  ("actively at work" defined as "actually working for the Policyholder at least thirty hours per week,  performing all of the normal duties of the individual's job at Policyholder's normal place of business" or other required location).   Unlike the Transamerica policy, other insurance contracts more clearly define the term "actively at work" by qualifying the term with specific exceptions and standards rather than ambiguously defining the term as "being on the job as required of an employee of the Policyholder."

In light of the policy's ambiguity and the reliance upon the employer's policies in classifying an employee as "Actively at Work,"  the district court properly  resorted to extrinsic evidence in an effort to identify objective evidence of the parties' intent. United Paperworkers Int'l Union, 908 F.2d at 1256.   At trial, Heidi Eckert Finchem, employee benefits administrator for Delchamps and plan administrator, testified that Delchamps had considered Mr. Jackson an active, full-time employee, albeit on an approved leave of absence, until his death.   Because Mr. Jackson was on an authorized leave of

13

absence, Delchamps did not require him to be physically at work at Delchamps but considered him to be "Actively at Work."  Ms.  Finchem's testimony as to Delchamps' classification of Mr. Jackson's status is especially probative because of the policy's reliance thereon to define coverage.    Furthermore, the fact that Transamerica continued to accept the premiums that Delchamps paid for Mr. Jackson until his death only bolsters Delchamps' assertion that Mr. Jackson satisfied the policy's requirements for coverage.[4]

After construing the policy as a whole in light of the extrinsic evidence, we conclude that the policy remains ambiguous because it is reasonably susceptible of two opposite meanings with respect to its coverage of Mr. Jackson.   As such,  we must construe the policy's terms in favor of the insured  under the principle of contra proferentum.  Jones, 90 F.3d at 116 (citing Todd v. AIG, 47 F.3d at 1451-52).  Applying this rule to the present case, it is clear that Mr. Jackson was an eligible employee in that he was considered to be an active, full-time, employee by his employer and was actively at work as required by his employer.

With respect to the "works 30 hours per week" language within the definition of an "Employee," this language can be understood as requiring that the insured actually

---

[4] We note that Transamerica's policy specifically authorizes it to examine all records of the Policyholder, Delchamps, pertaining to the insurance.  Furthermore, the policy also requires the Policyholder to provide Transamerica with all data necessary to administer the policy including information needed to determine the date on which insurance takes effect and class or change in class for each member.  At trial, Ms. Finchem testified that this information was provided to Delchamps' broker of record. Transamerica does not argue that Delchamps' actions were not in compliance with this portion of the policy.

14

work 30 hours each and every week during the effective period of the policy or simply that the normal work week established by the employer must consist of at least thirty hours. Because this language is reasonably susceptible to more than one meaning, it is also ambiguous and must be construed in favor of the insured under the rule of contra proferentum. Ms. Finchem testified, on behalf of Delchamps, that Mr. Jackson had normally worked forty hours per week until his work related injury. As such, we conclude that the district court did not err in finding that Mr. Jackson's employment status fell within the thirty hour per week classification. But see Turner, 17 F.3d at 143-44 and n. 4 (6th Cir. 1994) (provision defining eligible employees as those "working a minimum of thirty hours each week" meant employees working a minimum of thirty hours per week during the policy's effective period, not before) (emphasis added); Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 490 (1st Cir. 1989) (though the court assumed that the insured had worked 30 hours per week after the policy's effective date, it found no coverage for Burnham as the work was not performed at the employer's business establishment or at any other location to which the employer's business required him to travel).

At oral argument, Transamerica conceded that employees physically absent from work because of maternity leave, vacation, or a temporary minor illness remained eligible under the policy notwithstanding their failure to actually work 30 hours per week, but argued that employees absent because of a work related injury for which workers' compensation benefits are being paid are not similarly eligible. However, the policy does not allow these distinctions. And we cannot assume that the parties intended to

15

implement any such unwritten classifications. Allowing an employee to take a leave of absence from work because of a work related injury without a loss of group insurance benefits is as much a normal emolument of employment as such leave granted for other purposes. As the district court stated, "[i]t is rather ludicrous to say that because somebody is on workmen's compensation, work-injured while they're employed, that they automatically lose benefits even though they're still a full-time employee."

The Replacement of Coverage provision of the Transamerica policy provides an alternative basis, as the district court concluded, for holding that the Transamerica policy afforded Mr. Jackson coverage. Although neither Jackson nor Transamerica introduced the State Mutual Policy into evidence, Ms. Finchem, an individual obviously familiar with the State Mutual policy, testified that Mr. Jackson was covered under the State Mutual policy.[5] Transamerica did not offer any evidence to rebut her testimony.

On appeal, Transamerica argues that Ms. Finchem's testimony that Mr. Jackson "was covered" under the State Mutual policy does not necessarily mean that he was covered up until the date the State Mutual policy ceased to be effective, July 31, 1987, as required by the Transamerica policy. We are not persuaded by Transamerica's

---

[5]At trial, Transamerica objected to Ms. Finchem's testimony with respect to coverage under the State Mutual policy on the ground that her opinion was not relevant. On appeal, Transamerica only argues that Ms. Finchem's testimony that Mr. Jackson "was covered" is irrelevant to the question of whether he was covered on the date the policy ceased to be effective, July 31, 1987. Disposing of the argument asserted on appeal, see infra, we conclude that any other ground for objection Transamerica might have had has been waived. See United Paperworkers Int'l Union, 908 F.2d at 1255 ("issues not raised or argued in the appellant's brief are considered waived and will not be entertained on appeal").

argument. Ms. Finchem clearly understood that her testimony was elicited for the purpose of determining whether the Replacement of Coverage provision of the Transamerica policy provided Mr. Jackson coverage under that policy. As Ms. Finchem was aware that the Replacement of Coverage provision clearly requires that the person in question have had coverage under the "Former Plan" on the date it ceased, the district court's interpretation of Ms. Finchem's testimony as indicating that the State Mutual policy provided coverage to Mr. Jackson on July 31, 1987 was reasonable. Apparently all counsel understood this to be her meaning because no one questioned her about this specific date. As such, the district court's conclusion that Mr. Jackson was covered under the Transamerica policy by virtue of the Replacement of Coverage policy provision irrespective of whether the "active employment or effective date requirements have been met" is not legally incorrect.

IV

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir. 1980), set forth a five-factor test to be used in calculating attorneys' fees in an ERISA case. These factors include:

(1) the degree of the opposing parties' culpability or bad faith;
(2) the ability of the opposing parties to satisfy an award of attorneys' fees;
(3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances
(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant

17

> legal question regarding ERISA itself;    and
>  (5) the relative merits of the parties positions.

Bowen, 624 F.2d at 1266.

The Bowen court explained that these factors are the "nuclei of concerns a court should consider," but also emphasized that "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case." Id. In Todd v. AIG Life Ins. Co., this Court indicated that if fees are justified by an application of the five Bowen factors, the court must then apply a lodestar calculation to determine the amount to be awarded by multiplying the number of hours expended on the matters at issue by a reasonable hourly rate.   47 F.3d at 1459.   A district court's award of attorneys' fees pursuant to ERISA is reviewed under an abuse of discretion standard. Id. at 1458.

In the instant case, the court concluded attorneys' fees were merited, but reduced the number of hours submitted by Jackson in making the lodestar calculation as her attorney did not keep contemporaneous time records to document the number of hours submitted to the court.    Applying the Bowen factors, the district court specifically concluded that Transamerica had failed to deal in good faith with Jackson. Additionally, the district court reasoned that an attorneys' fee award against Transamerica would provide incentive for Transamerica to read and comply with its own policy in the future.  Prior to reaching this conclusion, the district court had quoted the language of the third Bowen factor practically verbatim.    In concluding that an award would deter Transamerica from similar conduct in the future, the district court clearly adverted to the deterrence factor and by implication concluded that other parties, in addition to

18

Transamerica, would be deterred from similar conduct. Furthermore, the court concluded there was "no contest" in evaluating the relative merits of Transamerica's position against Jackson's; Transamerica's position was without merit.

We find no abuse of discretion in the district court's award of attorneys' fees to Jackson. Although the instant case may not resolve a significant legal question involving ERISA itself and only provides immediate relief to Jackson alone, similar questions of insurance contract construction often arise in ERISA cases. As such, other participants in ERISA plans ultimately may benefit from the resolution of Jackson's claims. Furthermore, though the district court indicated that no evidence had been introduced with respect to Transamerica's ability to pay an attorneys' fee award, no one of these factors is necessarily determinative and consideration of some of these factors may not be appropriate in a given case. Bowen, 624 F.2d at 1266. With respect to the amount of the award, failure to keep contemporaneous time records can justify a reduction in the hours claimed. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)(reviewing award under 42 U.S.C. § 1988).

V.

The district court's final judgment purports to "specifically retain jurisdiction to revisit damages available to Plaintiff from Delchamps and the Plan if, for any reason, the Transamerica policy benefits are not available to Plaintiff." We find that the district court erred in attempting to retain jurisdiction in the event that the Transamerica policy benefits were not available to Jackson for any reason. The filing of a notice of appeal

19

transfers jurisdiction from the district court to the court of appeals with respect to all matters involved in the appeal.  Thomas v. Capital Sec. Serv.,Inc., 812 F.2d 984, 987 (5th Cir. 1987), modified on other grounds, 836 F.2d 866 (5th Cir. 1988); 20 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 303.32 (3d ed. 1997).  Although exceptions do exist to this general rule, none are applicable in the present case.  See  Coastal Corp. v. Texas E. Corp, 869 F.2d 817, 820 (5th Cir. 1989) (jurisdiction to issue injunction maintaining status quo);    Thomas, 812 F.2d at 987 (attorney's fees or sanctions); Matter of Miranne, 852 F.2d 805, 806 (5th Cir. 1988)(district court retains jurisdiction to issue stay while appeal is pending);  Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 (5th Cir. 1984) (jurisdiction to correct clerical errors).   Stated simply, a district court may not retain jurisdiction to increase the liability of one defendant if its award against another defendant is reversed on appeal when an appeal has been taken with respect to all issues involved in the final judgment.

For the foregoing reasons, the judgment of the district court is amended to delete its retention of jurisdiction and, as amended, is AFFIRMED.


EMILIO M. GARZA, Circuit Judge, dissents.