N.R. SMITH, Circuit Judge,
dissenting:
Mr. LeGras had 180 days to appeal an adverse decision from AETNA Life Insurance Company (“AETNA”), denying him long-term disability benefits under a Long Term Disability Plan (“Plan”) provided by his employer, Federal Express (“FedEx”). He lost his opportunity to appeal as a result of his own conduct; he sent his appeal to AETNA two days after the appeal period expired. Even LeGras agrees that he sent his appeal two days late. To excuse LeGras’s untimeliness, the majority turns a simple case of contract interpretation into an opportunity to (without precedent) expand federal common law surrounding the Employee Retirement Income Security Act (“ERISA”) to rewrite private contracts. I cannot go along with them in “bailing LeGras out.”
“An ERISA plan is a contract that we interpret in an ordinary and popular sense as would a person of average intelligence and experience. We look first to the explicit language of the agreement to determine, if possible, the clear intent of the parties.... ” Harlick v. Blue Shield of Cal., 686 F.3d 699, 708 (9th Cir.2012) (internal quotation marks, citations, and alterations omitted). In general, “[cjontraet terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.” Klamath Water Users Protective Ass’n v. Patterson, 204 F.3d 1206, 1210 (9th Cir.1999). “That the parties dispute a contract’s meaning does not render the contract ambiguous; a contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.” Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir.2009) (internal quotation marks omitted).
The terms of this contract are not ambiguous. By the Plan’s terms, LeGras had 180 days to file his appeal with AETNA by mail. All parties agree that LeGras received notice from AETNA that his long-term disability claim had been denied on April 18, 2011. It is also undisputed that October 15, 2011, is 180 days from the date of the notice. Where is the ambiguity? A person of average intelligence and experience would understand 180 days to mean precisely what LeGras understood it to *1241 mean here.[1] LeGras knew that the 180-day period ended on October 15, 2011; our only question: whether he should be allowed to extend that time by two days solely because the deadline for the 180-day appeal period happened to be on a Saturday.
In other words, LeGras messed up; he failed to abide by his contract and now seeks an excuse to set aside his failure. LeGras has never offered any reason to explain why he failed to timely appeal. He could have mailed that appeal on any one of 180 days after April 18, 2011, including October 15, 2011. He offers no explanation why he did not. Post offices around the nation (even in Pocatello, Idaho) are open on Saturdays. LeGras offers no evidence to the contrary and no explanation why he did not send his appeal on that Saturday. All LeGras had to do (in order to preserve his rights) was mail the appeal within a six-month window. Instead, he flatly argues that he does not need to comply with his contract. Because the terms of the Plan are clear, the district court did not err when it dismissed Le-Gras’s action with prejudice for failure to exhaust his administrative remedies. Our analysis should end here, with the contract.
To get around the plain terms of the contract, the majority is forced to create federal common law, in light of the ERISA regulations applicable to the Plan.[2] These regulations provide that an employee benefit plan “shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination.” 29 C.F.R. § 2560.503-l(h)(l). In order to have a reasonable opportunity, an employee benefit plan must “[pjrovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination.” § 2560.503 — 1(h)(3)(i).
No one argues that the Plan did not comply with the ERISA regulations. Applying these regulations, the majority’s logic “hits a dead end.” The 180-day time limit in this case arises from the contract between LeGras, FedEx, and AETNA, and complies with the ERISA regulations. The Plan gave LeGras 180 days following receipt of the letter denying long term disability benefits to file his appeal, as the regulations outline. For that reason, LeGras never even asserted that the Plan, which incorporates the regulation’s language, was in violation of ERISA or its implementing regulations. LeGras’s only contentions in the district court and on appeal (prior to oral argument) were that Fed.R.Civ.P. 6 should be applied in some manner to the terms of the Plan and that AETNA breached the contract by denying his claim. In the absence of a claim that the Plan is nonconforming to the regulations, we do not *1242 have occasion to determine whether the 180-day time limit provided in the Plan and interpreted by AETNA is reasonable within the meaning of § 2560.503-l(h)(l). See United States v. Pallares-Galan, 359 F.3d 1088, 1094-95 (9th Cir.2004) (noting that claims raised for the first time on appeal are deemed waived). Accordingly, the majority does not hold that the Plan violates ERISA; instead it undertakes to rewrite the terms of the contract.
The majority declines to accept LeGras’s primary contention at oral argument and on appeal: that Rule 6 should be directly applied to compute the 180-day appeal period provided in the Plan. Instead, the majority suggests we must rewrite the unambiguous terms of the Plan, a private contract between the parties, in light of the federal common law and the purpose of ERISA.[3] I have no doubt that the majority is correct that we should construe ERISA liberally “in favor of protecting participants in employee benefit plans.” Batchelor v. Oak Hill Med. Grp., 870 F.2d 1446, 1449 (9th Cir.1989). However, as already noted, we must begin with the contract. The terms of the contract are paramount, because “applying federal common law doctrines to alter ERISA plans is inappropriate where the terms of an ERISA plan are clear and unambiguous.” Zurich Am. Ins. Co. v. O’Hara, 604 F.3d 1232, 1237 n. 4 (11th Cir.2010). The majority’s holding ignores this limit on the reach of our power to craft federal common law for ERISA-regulated plans and drastically expands doctrines, meant to protect lay persons from deceptive plan drafting, to impose a “reasonableness” rule on every provision of an ERISA insurance plan. In doing so, the majority improperly conflates the requirement that an insured be given a reasonable opportunity to appeal an adverse decision with doctrines requiring an insurance contract to be interpreted in light of an insured’s reasonable expectations.
Athough the majority is correct that we have used the federal common law in cases interpreting ERISA plans, we have never used it in these circumstances. This is not a case, for example, where we are called upon to determine whether common law remedies are available regarding ERISA plans. See Security Life Ins. Co. of Am. v. Meyling, 146 F.3d 1184, 1191 (9th Cir.1998). Further, in Meyling, we importantly noted that the plan terms limited whether the common law remedy was available in that particular case. Id. at 1192; see Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 822 (9th Cir.1992) (“Because the plan was unambiguous, the Greanys cannot avail themselves of the federal common law claim of equitable estoppel.”).
The limiting power of unambiguous plan terms to the use of the federal common law also frames any discussion of the case that is the linchpin of the majority’s holding: Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382 (9th Cir.1994). In that case, we endorsed the “reasonable expectations” doctrine for ERISA insurance plans, id. at 387, but we never suggested (as the majority now does) that the doctrine was available to revise unambiguous plan terms where those terms did not implicate questions of coverage. The majority interprets Saltarelli to mean that it can read an insured’s “reasonable expectations” into any term of an ERISA plan without limits. However, the doctrine was never intended for this purpose. Instead, the “reasonable expectations” doctrine is meant to protect insureds “regarding the *1243 coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.” Id. at 386 (internal quotation marks omitted) (emphasis added). Therefore, in Saltarelli, we concluded that an exclusionary clause for preexisting conditions was unenforceable given that it was not plain and conspicuous. Id. at 386-87. We have never applied the “reasonable expectations” doctrine outside the context of determining the reach of insurance coverage. See, e.g., Snow v. Standard Ins. Co., 87 F.3d 327, 331 n. 1 (9th Cir.1996) (declining to apply doctrine of reasonable expectations to plan administrator’s discretion), overruled on other grounds by Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir.1999) (en banc).
The cases that the majority cites (to support its holding that an insured’s reasonable expectation that the time period to mail an appeal would not end on a Saturday) are not persuasive. In Street v. United States, 133 U.S. 299, 10 S.Ct. 309, 33 L.Ed. 631 (1890), the Supreme Court held that an executive action taken one day outside of the Congressionally mandated time frame for the officer to act was legal in part because the last day was a Sunday. Id. at 305-06, 10 S.Ct. 309. Far from recognizing any “general understanding” regarding the performance of a legal act on a weekend, Op. at 1236-37, the Supreme Court grounded its holding in the purpose of the statute and the special nature of Sunday as a holiday or a dies non. Id. at 305-07, 10 S.Ct. 309. In Armstrong v. Tisch, the Fifth Circuit decided to incorporate Rule 6 into a regulation, because the deadline could fall on a date “on which the act cannot be legally done.” 835 F.2d 1139, 1140 (5th Cir.1988) (internal quotation marks omitted). The only act, that LeGras was legally required to do in order to preserve his appeal rights, was to mail a letter to AETNA. LeGras does not argue he could not legally mail a letter on a Saturday.
Similarly, the majority’s reliance on Schikore v. BankAmerica Supplemental Retirement Plan, 269 F.3d 956 (9th Cir. 2001), for the proposition that we must invoke the federal common law to rewrite the terms of the Plan, is misplaced. Op. at 1236-37. In Schikore, this court held that the mailbox rule applied to litigation involving an ERISA plan. Id. at 964-65. However, the question before the Schikore court was fundamentally different than the question before us now. That difference illuminates why deploying the federal common law is inappropriate in this case. The question in Schikore was “not the interpretation of a plan term ... but, rather, whether an evidentiary rule of federal common law is applicable in the, absence of a provision in a plan rejecting that rule.” Id. at 962 n. 3. The court in Schikore clearly stated that the mailbox rule “does not operate as a rule of construction.” Id. at 961. The court was not tasked with construing the meaning of plan terms at all but with resolving “a critical evidentiary question: specifically, who bears the ultimate burden of establishing receipt when receipt is disputed and the evidence is inconclusive.” Id. at 963. Our power to create federal common law with regard to ERISA plans was well suited to the task in Schikore. Faced with an evidentiary dispute, the court crafted a presumption to assist in the resolution of the case. However, our job in this case is decidedly different: we need only determine the meaning of 180 days within the context of the Plan. There is no dispute that LeGras failed to comply with this Plan provision.
Further, LeGras is distinguishable from the plaintiff in Schikore. We must determine, not whether LeGras complied, but *1244 whether we should come to his rescue after he unambiguously missed the 180-day deadline. The Fifth Circuit has already answered this question in Jones v. Georgia Pacific Corp., 90 F.3d 114 (5th Cir.1996). There, the Fifth Circuit refused to apply Rule 6 to a private contract when the terms of that contract were unambiguous. Jones, 90 F.3d at 117. The majority’s attempts, to distinguish the present case from Jones, compromise its own reasoning. The majority holds that Jones is not applicable because it “did not interpret a contractual provision that was required by ERISA ... defendants, as offerors of a private option contract, had full control of the length of time during which the power of acceptance shall last.” Op. at 1239 (internal quotation marks and alterations omitted). However, the Jones plan beneficiary lost his plan benefits, because he died one day outside of the time to make an election necessary to preserve his rights. Jones, 90 F.3d at 115. Therefore, the prudential considerations (the majority now asserts for LeGras) would be far more appropriate to trigger crafting federal common law for the beneficiary in Jones. He could not control the date of his death. On the contrary, LeGras had six months to mail a letter and failed to do so. The Fifth Circuit did not rescue Jones with federal common law; our case presents far less reason to rescue LeGras. The Plan is (similar to the contract in Jones) a private contract for which we are bound to apply its unambiguous terms. The Fifth Circuit got it right; it refused to, “in effect, write into the policy a provision that would extend the period ... if [the deadline falls on a weekend].” Id. at 116.
Wé should do the same here. The Plan terms are clear and comply in every respect with ERISA regulations. LeGras had 180 days to notify AETNA that he wanted to appeal its decision. One can only conclude that LeGras failed to abide by the clear and unambiguous terms of his contract. The analysis in this case should end there. But the majority (intent on “bailing LeGras out”) unnecessarily intrudes upon the ability of the parties to enforce the terms of their negotiated private contract.
Therefore, I must respectfully dissent.

. The majority’s attempt to distinguish Jones v. Georgia Pacific Corp., 90 F.3d 114 (5th Cir.1996), by holding that the terms of the plan at issue in Jones were not ambiguous, is not persuasive. Op. at 1238-39. In the only respect in which Jones is relevant to this case, this Plan is no more ambiguous than the plan • in Jones; neither plan specifies what happens if the last day falls on a Saturday.

. In doing so, the majority appears to go beyond the relief requested by LeGras. Le-Gras's briefing .was focused on incorporating Fed.R.Civ.P. 6 into all time limits in insurance plans regulated by ERISA; LeGras would use the federal common law to accomplish that incorporation only if we determined Rule 6 did not directly apply, and then only to get him a couple of extra days to file. Although the basis for the majority’s holding is not clear, it appears to have recognized that LeGras's Rule 6-based approach is not tenable and has instead opted to impose a rule of reasonableness on all terms in all ERISA insurance plans.

. Indeed, the majority’s discussion of Rule 6, so central to LeGras’s argument, is merely used to provide evidence that its preferred approach is "widespread” in other contexts. Op. at 1237-38.